BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**JOHN C. BRASSELL, WASB #51639**
Assistant United States Attorney
john.brassell@usdoj.gov
1000 S.W. Third, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 3:17-CR-00321-SI |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **ANTHONY WAYNE TAVOLONI, JR.,** | |
| **Defendant.** | |

The United States of America, by Billy J. Williams, United States Attorney for the District of Oregon, and John C. Brassell, Assistant United States Attorney, hereby submits the following memorandum for defendant's sentencing.

## I. SUMMARY

On August 20, 2017, defendant was arrested on state assault and harassment charges for assaulting within the Portland International Airport. He was released the same day. On August 24, 2017, a federal complaint and arrest warrant were issued charging defendant with assault on an officer. On September 6, 2017, a federal grand jury returned a four-count indictment charging defendant with two counts Interference with Security Screening Personnel in violation of 49

U.S.C. § 46503 and two counts of Assaulting, Resisting, or Impeding Certain Officers or Employees in violation of 18 U.S.C. § 111. On September 15, 2017, defendant was arrested on the federal charges. Defendant was released pending trial. On May 21, 2018, defendant pled guilty to Counts 3 and 4 of the indictment. The Court accepted defendant's plea and ordered a Presentence Report (PSR). Defendant remains out of custody pending sentencing, which is scheduled for September 12, 2018, at 9:00am.

The government agrees with the factual basis and guideline calculations of the PSR. The government will recommend a downward variance of the guidelines and request that defendant be sentenced to a three-year term of probation that includes a six-month term of home detention.

## II. FACTUAL BACKGROUND

On August 20, 2017, the defendant entered the Transportation Security Administration ("TSA") screening line of the Portland International Airport, and was asked by Adult Victim 1 ("AV1"), for his boarding pass. Defendant replied, "No." AV1 asked defendant a second time for his boarding pass, to which defendant removed his backpack, dropped it to the floor, and without attempting to obtain the boarding pass located inside his backpack, took two steps towards AV1 and stated, "You really want to do this?" Defendant then walked behind the small table placed between him and AV1. As defendant approached AV1, who was seated behind the table, he grabbed her outstretched arms while she repeatedly yelled "STOP" and attempted to wrestle her out of his way.

Alerted, two passengers and other TSA employees rushed over to assist AV1. Two passengers restrained defendant, while others attempted to separate AV1 from his grip. Once AV1 was free, multiple TSA officers created a barrier between Defendant and AV1. Defendant then stated, "We're about to have a bad day, do you really want to do this?" to which one of the TSA

officers, identified as Adult Victim 2 ("AV2"), replied, "No one needs to have a bad day." Defendant then lunged at AV2 making contact with AV2's face. At this point, defendant was wrestled to the ground by TSA employees and held until police arrived.

### III.     SENTENCING CONSIDERATIONS

While not bound by the Sentencing Guidelines, district courts must consult the Guidelines and take them into account when sentencing. *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738, 767 (2005). The sentencing guidelines are advisory and one of the statutory factors this Court must consider when imposing a sentence. *See* 18 U.S.C. § 3553(a)(4); *United States v. Rita*, 551 U.S. 338, 347-48 (2007). They serve as "the starting point and the initial benchmark" in every sentencing proceeding, *Gall v. United States*, 552 U.S. 38, 49 (2007), and "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita*, 551 U.S. at 350. The guidelines serve as a "lodestar" at sentencing, and "cabin" or "anchor" a sentencing court's discretion. *Peugh v. United States*, __ U.S. ___, 2013 WL 2459523, *9-10 (2013). While advisory, the Supreme Court has observed that, "[c]ommon sense indicates that in general, this system will steer district courts to more within-guidelines sentences." *Id*.

The remaining statutory factors include the defendant's history and characteristics, the nature and seriousness of the offense, the need to provide just punishment and adequate deterrence, the need to promote respect for the law, and the need to protect the public from further crimes committed by the defendant. 18 U.S.C. §§ 3553(a)(1)-(2). They also include "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), and, where applicable, the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(7); *see also Rita*, 551 U.S. at 347-48 (enumerating the statutory sentencing factors); *Gall*, 552 U.S. at 50, n.6 (same).

In *United States v. Carty*, 520 F.3d 984 (9th Cir. 2008), the Ninth Circuit, sitting *en banc*, summarized the procedures a sentencing court must follow. The court must first correctly determine the applicable guideline range. *Id*. at 991. The court must also allow the parties to "argue for a sentence they believe is appropriate," and must "consider the § 3553(a) factors to decide if they support the sentence suggested by the parties." *Id*. The court may not presume the guidelines are reasonable, and should not give them any more or any less weight than any other factor. *Id*. The court "must make an individualized determination based on the facts," and must explain its choice of sentence "sufficiently to permit meaningful appellate review." *Id*. at 991-92.

## IV. PLEA AGREEMENT AND GUIDELINES CALCULATION

The government agrees with the sentencing guideline calculations as described in ¶¶ 21-35 of the PSR. The Base Offense Level for Counts 3 and 4 of the indictment is 10. A three-level increase applies under USSG § 2A2.4(b)(1) because physical contact was made. A multi-count adjustment under USSG § 3D1.4 provides an additional two-level increase. Defendant has shown an acceptance of responsibility and thus a two-level reduction applies under § 3E1.1. Thus the total offense level is 13.

The government also agrees that defendant is a Criminal History Category II as laid out in ¶¶ 36-44 of the PSR. Based on these calculations, defendant's sentencing guideline range is 15-21 months. After reviewing the mitigating material presented by defendant, the government has agreed to recommend an additional three level departure bringing the total offense level to 10, placing defendant in Zone B of the guidelines.

///
///
///

## V.    CONCLUSION & RECOMMENDATION

The government recommends a sentence of three years' probation with six months of home detention. This sentence will provide punishment for the defendant, while also satisfying the requirement of 18 U.S.C. § 3553(a), as a "sentence sufficient, but not greater than necessary" to meet the purposes of § 3553(a)(2).

Dated this 5th day of September 2018.

                                               Respectfully submitted,

                                               BILLY J. WILLIAMS, OSB #901366
                                               United States Attorney

                                             *s/ John C. Brassell*
                                             JOHN C. BRASSELL, WASB #51639
                                             Assistant United States Attorney